UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| TROY NORTON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>TRUEACCORD CORP, and LVNV FUNDING LLC,<br><br>    Defendants. | Case No.: 18-cv-742<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5. Defendant TrueAccord Corp. ("TrueAccord") is a foreign business corporation with its principal offices located at 303 2nd Street, Suite 750 South, San Francisco, California 94107.

6. TrueAccord is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. TrueAccord is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. TrueAccord is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

9. Defendant LVNV Funding, LLC ("LVNV") is a foreign limited liability company and debt collection agency with its principal place of business located at 15 South Main Street, Greenville, South Carolina 29601.

10. LVNV is engaged in the business of collecting debts, originally owed to others and acquired after default, which were incurred for personal, family or household purposes.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 189994, at *24-30 (M.D. Pa. Nov. 16, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector

if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

13. The primary purpose of LVNV's business, and LVNV's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

14. In *Mitchell* and *McMahon*, the Northern District of Indiana and the Northern District of Illinois, respectively, denied the plaintiffs' and LVNV's cross motions for summary judgment on the issue of whether LVNV was a debt collector, as defined in the FDCPA, holding that determination of LVNV's principal purpose is a factual issue that must be left for the jury. *Mitchell*, 2017 U.S. Dist. LEXIS 206440, at *19; *McMahon*, 2018 U.S. Dist. LEXIS 41984, at *32-38.

15. In *Torres*, the Northern District of Illinois granted the plaintiff's motion for summary judgment on the issue of whether LVNV was a debt collector, as defined in the FDCPA, holding that LVNV was a debt collector because its only business purpose is to purchase debts and the collect them, it holds an Illinois collection agency license, it pursued collection of the outstanding debt by having its "master servicing agent" place the account with

3

servicers, and its own deposition witness admitted that the only service LVNV provides is as a debt owner. *Torres*, 2018 U.S. Dist. LEXIS 49885, at *14-15.

16. LVNV's website states:

> LVNV Funding LLC, ("LVNV") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency.

http://www.lvnvfunding.com/ (accessed March 15, 2018).

17. In addition to telephone and mail-based debt collection activities, LVNV is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for "LVNV*" returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

18. CCAP shows that LVNV *filed* more than 300 civil and small claims actions in Wisconsin in April 2018 alone. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

19. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

20. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

21. LVNV is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of former consumer credit card accounts. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

22. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

23. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

24. LVNV uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

25. LVNV is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

26. A company meeting the definition of a "debt collector" (here, LVNV) is vicariously liable for the actions of a second company (here, TrueAccord) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

5

## FACTS

27. On or about March 29, 2018, CreditOne, N.A. ("CreditOne") mailed a Notice of Assignment letter to Plaintiff, informing him that his alleged CreditOne account ending in 6224 had been assigned to LVNV. A copy of this Notice of Assignment letter is attached to this complaint as Exhibit A.

28. Upon information and belief, the alleged debt referenced in Exhibit A was a personal credit card account, used only for personal, family, or household purposes.

29. On or about April 9, 2018, TrueAccord mailed a debt collection letter to Plaintiff regarding this same alleged debt, allegedly owed to LVNV and allegedly originally owed to CreditOne. A copy of this letter is attached to this complaint as Exhibit B.

30. Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

31. Upon information and belief, Exhibit B is a form debt collection letter, used by TrueAccord to attempt to collect alleged debts.

32. Upon information and belief, Exhibit B, dated less than two weeks after Exhibit A, was the first written communication TrueAccord mailed to Plaintiff regarding the alleged debt referenced in Exhibit B.

33. 15 U.S.C. § 1692g(a) requires debt collectors to provide a written notice including certain information to consumers along with, or within five days of, the initial contact with the consumer:

> **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

34. The disclosures required by 15 U.S.C. §§ 1692g(a)(3)-(5) are colloquially referred to as the "debt validation notice."

35. <u>Exhibit B</u> contains the following:

> Please make sure you read all of the following important information. There may be more important information continued on a second page.
>
> Important Notice:
> This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained from you will be used for that purpose.
>
> You can view your Gramm-Leach-Bliley Privacy Rights by visiting this url: http://go.trueaccord.com/sherman_glb (http://go.trueaccord.com/sherman_glb)
>
> Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations. This notice in no way affects any rights you may have.
>
> The remaining balance owed to LVNV Funding LLC is $1073.92. The balance breakdown is as follows: $1073.92 in principal (which may include interest and fees accrued prior to purchase), $0.00 in fees since purchase, $0.00 in interest since purchase, and $0.00 in administrative costs since purchase.
> TrueAccord does not charge fees or interest to the consumer related to our collections efforts.
> LVNV Funding LLC account number ending in: 8908. The original Creditor was Credit One Bank, N.A. (issuer of your Credit One Bank, N.A. card), and the account number was ending in: 6224

<u>Exhibit B</u>.

36. <u>Exhibit B</u> did not include "more important information continued on a second page."

37. <u>Exhibit B</u> did not include a second page at all, and the reverse side of <u>Exhibit B</u> is blank.

7

38. Upon information and belief, TrueAccord did not send a written communication containing the debt validation notice to Plaintiff along with, or within five days of, Exhibit B.

39. Plaintiff reviews his mail personally every day. He does not dispose of collection letters, but brings them to his attorneys. *See, e.g.,* Exhibits A and B.

40. Plaintiff has lived at his current address since prior to receiving Exhibit A. He has not moved residences and was not in the process of moving in March or April 2018.

41. Moreover, Plaintiff is currently involved in several other billing and collection disputes. As a result, he is careful not to dispose of any mail that could be relevant to those disputes.

42. If TrueAccord had mailed a collection letter to Plaintiff, he would have received it and brought it to his attorneys.

43. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

44. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, TrueAccord's failure to provide the debt validation notice is a material false statement.

45. The debt validation notice informs consumers of their rights under 15 U.S.C. § 1692g(b), which states:

**Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or

8

judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

46. Failing to provide the validation notice prevents the consumer from disputing the debt, and triggering his right to require that the debt collector cease collection activities. i 15 U.S.C. § 1692g(b).

47. Moreover, <u>Exhibit B</u> contains the following:

Please take a moment to review your options:
- Make a full payment. Clear your balance entirely today or on a later date that works for you.
- Set up a payment plan: Pay in recurring affordable installments that work with your schedule.

<u>Exhibit B</u>.

48. <u>Exhibit B</u> was mailed less than two weeks after <u>Exhibit A</u>. Upon information and belief, <u>Exhibit B</u> was mailed fewer than thirty days after the alleged debt referenced in <u>Exhibits A and B</u> was assigned from CreditOne to LVNV, and fewer than thirty days after the alleged debt was assigned for collection by LVNV to TrueAccord.

49. The debt validation period is thirty days, and the consumer may dispute the debt anytime during the thirty-day period, beginning with his receipt of the written debt validation notice. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997).

50. Even assuming TrueAccord mailed Plaintiff a debt validation notice before, or within five days after, mailing <u>Exhibit B</u>, the validation period would not have expired until long after <u>Exhibit B</u> was mailed.

9

51. Exhibit B states that Plaintiff's "options" were to "Make a full payment[,]" or to "Set up a payment plan[.]"

52. Exhibit B does not reference Plaintiff's rights to dispute the debt.

53. The representation that Plaintiff did not have the option to dispute the debt as of the date of Exhibit B is a material false statement.

54. Exhibit B also contains the following:

> The remaining balance owed to LVNV Funding LLC is $1073.92. The balance breakdown is as follows: $1073.92 in principal (which may include interest and fees accrued prior to purchase), $0.00 in fees since purchase, $0.00 in interest since purchase, and $0.00 in administrative costs since purchase.
> TrueAccord does not charge fees or interest to the consumer related to our collections efforts.

Exhibit B.

55. Exhibit B provides a "balance breakdown" that itemizes $0.00 in "fees" and "administrative costs."

56. Exhibit B states that "TrueAccord does not charge fees or interest to the consumer related to our collection efforts."

57. The unsophisticated consumer, considering the "balance breakdown" alongside the statement that TrueAccord does not charge fees or interest would understand these representations to mean that LVNV may, and would, impose these charges unless the consumer pays the account in full while TrueAccord is collecting it. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

58. In fact, neither LVNV nor TrueAccord may charge a collection fee on Plaintiff's personal consumer credit card account.

59. Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

60. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

61. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

62. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

63. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

64. Because credit card transactions are consumer credit transactions, Exhibit B, with its references to "fees since purchase" and "administrative costs since purchase" falsely states or implies that LVNV has a right to add collection fees to the debt.

65. Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit the creditor or the debt collector to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also*

11

*Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 15 U.S.C. § 1692e).

66. Exhibit B falsely threatens the unsophisticated consumer with the possibility that LVNV will add "fees" or "administrative costs" if the consumer does not pay the debt while TrueAccord is collecting it.

67. Plaintiff was confused and misled by Exhibit B.

68. The unsophisticated consumer would be confused and misled by Exhibit B.

69. Plaintiff had to spend time and money investigating Exhibit B and the consequences of any potential responses to Exhibit B.

70. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit B.

### *The FDCPA*

71. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

13

a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

72. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disPhillipsd, and to promote consistent State action to protect consumers against debt collection abuses").

73. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

74. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

75. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

76. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

14

77. 15 U.S.C. § 1692g states:

**(a) Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### *The WCA*

78. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

79. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

80. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

81. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

82. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

83. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

84. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

85. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

86. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

87. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

88. Wis. Stat. § 427.104(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

89. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. Defendants did not provide the debt validation notice along with, or within five days of, the initial communication.

91. Even assuming Defendants did provide the debt validation notice along with, or within five days of, the initial communication, representations in Exhibit B were inconsistent with, or overshadowed, the debt validation notice.

92. Defendants' conduct is misleading, confusing, and unconscionable in that the notice of Plaintiff's rights to dispute the debt and request the name and address of the original creditor was not effectively provided. 15 U.S.C. §§ 1692g(a) and 1692g(b).

93. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f 1692g(a), and 1692g(b).

## COUNT II – FDCPA

94. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95. <u>Exhibit B</u> falsely represents to the unsophisticated consumer that the debt may be subject to a collection fee unless it the consumer paid it in full while TrueAccord was collecting it.

96. Defendants violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT III – WCA

97. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98. Defendants did not effectively provide Plaintiff with the validation notice.

99. Defendants falsely represented that the account was subject to a collection fee if it was not paid while TrueAccord was collecting it.

100. <u>Exhibit B</u> falsely represents to the unsophisticated consumer that the debt may be subject to a collection fee unless the consumer paid it in full while TrueAccord was collecting it.

101. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

102. Plaintiff brings this action on behalf of a class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect an alleged debt, allegedly owed to LVNV, (d) which was incurred for personal, family or household purposes, (e) where the letter

in the form of <u>Exhibit B</u> was mailed between May 14, 2017, and May 14, 2018, inclusive, (e) and was not returned by the postal service.

103. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

104. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

105. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

106. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

107. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

108. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 14, 2018

                              **ADEMI & O'REILLY, LLP**

                By:    /s/ Mark A. Eldridge
                         John D. Blythin (SBN 1046105)
                         Mark A. Eldridge (SBN 1089944)
                         Jesse Fruchter (SBN 1097673)
                         Ben J. Slatky (SBN 1106892)
                         3620 East Layton Avenue
                         Cudahy, WI 53110
                         (414) 482-8000
                         (414) 482-8001 (fax)
                         jblythin@ademilaw.com
                         meldridge@ademilaw.com
                         jfruchter@ademilaw.com
                         bslatky@ademilaw.com